UNITED STATES of America, Plaintiff,

v.

302 CASES, 321 CASES, AND 420 CASES, MORE OR LESS, OF FROZEN SHRIMP, CURRENTLY LOCATED AT AMERICOLD CORPORATION, 1601 North 50 Street, Tampa, Florida, Stored to the Account of Central Seaway Company, Inc., Each Case Containing 6/2 Kilogram Unlabeled Packages, Labeled in Part: (Case) " * * * Frozen Peeled Shrimp with Tail on Zhejiang Foreign Economic Relations and Trade Development 91/110 [or 110/130 or 150/200] * * * Net WT: 2KGX6* * *," Defendants.

No. 98–476–CIV–T–17C.

United States District Court,
M.D. Florida,
Tampa Division.

Nov. 5, 1998.

Patricia A. Willing, U.S. Attorney's Office, Middle District of Florida, Tampa, FL, for U.S.

Janette Meredith Wester, Ruden, McClosky, Smith, Schuster & Russell, P.A., Tampa, FL, for Central Seaway Company, Inc.

### ORDER ON CLAIMANT'S MOTION FOR EXPORTATION

KOVACHEVICH, Chief Judge.

THIS CAUSE is before the Court on Claimant's, Central Seaway Company, Inc., Motion for Exportation, (Docket No. 11), filed on August 11, 1998. Plaintiff, United States, filed a response, (Docket No. 13), to Claimant's Motion for Exportation on August 27, 1998.

### BACKGROUND

On March 4, 1998, Plaintiff filed a Verified Complaint for Forfeiture *in Rem*, (Docket No. 1), seeking the seizure, condemnation, and forfeiture of the Defendant shrimp, in accordance with the Federal Food, Drug, and Cosmetic Act (FDCA), 21 U.S.C. §§ 301–395. Concurrent with the filing of the Verified Complaint for Forfeiture *in Rem*, (Docket No. 1), Plaintiff filed a Motion for Issuance of Warrant of Arrest *in Rem*, (Docket No. 2). The Court ordered the issuance of a Warrant for Arrest *in Rem*, (Docket No. 3), on March 4, 1998. Pursuant to this warrant, process was executed upon the Defendant shrimp. On March 18, 1998, Claimant filed an Answer, (Docket No. 6), to Plaintiff's Verified Complaint for Forfeiture *in Rem*, (Docket No. 1), requesting permission to submit the seized articles to expert analysis, to determine whether the items were decomposed or adulterated under 21 U.S.C. § 342(a)(3). Claimant also requested in the Answer, (Docket No. 6), that reexportation be permitted pursuant to 21 U.S.C. § 334(d)(1), 21 U.S.C. § 334(e), and 21 U.S.C. § 381(e). Concurrent with the filing of the Answer, (Docket No. 6), Claimant filed a Statement of Claim, (Docket No. 7).

Plaintiff filed the original Motion for Summary Judgment, (Docket No. 9), on July 24, 1998. Claimant responded, (Docket No. 10), in opposition to Plaintiff's Motion for Summary Judgment, (Docket No. 9), on August 11, 1998. Claimant filed a Motion for Exportation, (Docket No. 11), on August 11, 1998, which admitted that Defendant shrimp are decomposed and liable for condemnation under 21 U.S.C. § 334(a). Plaintiff responded, (Docket No. 13), to Claimant's request for exportation on August 27, 1998. On August 28, 1998, Plaintiff filed an Amended Motion for Summary Judgment, (Docket No. 15). Claimant's response, (Docket No. 16), to Plaintiff's Amended Motion for Summary Judgment was filed on September 10, 1998.

Plaintiff's Statement of Facts include the following:

1. On October 7, 1997, Singleton Seafood Co. (Singleton) requested the National Marine Fisheries Service (NMFS) to inspect four (4) lots of shrimp for weight, count, quality, and condition. Singleton intended to purchase these lots from Claimant, on the condition that the shrimp was of sufficient quality and weight. NMFS sampled three (3) of the four (4) lots of frozen Chinese shrimp, which were packed by the Zhejiang Foreign Economic Relations and Trade Development Corporation. NMFS analysis showed that the samples contained poor quality shrimp and that two (2) contained insect filth and rust fragments. Singleton notified Claimant on October 24, 1997, that it was rejecting lot numbers 96205, 96206, 96213. (Docket No. 15, Paragraph 1)

2. On the basis of its findings that the three (3) lots of shrimp contained evidence of decomposition and filth, NMFS sent the Florida District Office of the United States Food and Drug Administration (FDA) a Notice of Violation and Request for Action on October 31, 1997. (Docket No. 15, Paragraph 2).

3. In response, the FDA has conducted an investigation into lot numbers 96205, 96206, and 96213. All three (3) lots, which have been shipped in interstate commerce, are in the possession of Americold Corporation and are stored to the account of the Claimant. (Docket No. 15, Paragraph 3).

4. On November 4 and 6, 1997, FDA collected official samples from all three (3) lots of the frozen Chinese shrimp. The samples were kept frozen and shipped, via overnight delivery, to the FDA's Southeast Regional Laboratory, in Atlanta, Georgia. (Docket No. 15, Paragraph 4).

5. The FDA sample Custodian at the Southeast Regional Laboratory, received

the frozen samples and stored them in a freezer until the laboratory was prepared to begin the analysis. When the laboratory was ready, the custodian transferred the shrimp to five (5) FDA analysts, who are experts in organoleptic, chemical, and microscopic analysis of seafood, and who examined the samples for decomposition and filth. (Docket No. 15, Paragraph 5).

6. Based upon the results of the tests conducted by the analysts, the FDA has determined that the shrimp seized in this case are decomposed and contained filth. (Docket No. 15, Paragraph 6).

7. On March 4, 1998, the United States filed a Verified Complaint for Forfeiture *in Rem*, pursuant to 21 U.S.C. § 334, for the seizure, condemnation, and forfeiture of the Defendant shrimp as an article of food which is adulterated, within the meaning of 21 U.S.C. § 342(a)(3), when introduced into, while in, or while held for sale after shipment in, interstate commerce, in that the Defendant shrimp consist, in whole or in part, of decomposed shrimp. (Docket No. 15, Paragraph 7).

8. On March 5, 1998, the United States Marshals Service arrested the Defendant shrimp pursuant to a Warrant of Arrest *in Rem* issued by this Court. (Docket No. 15, Paragraph 8).

9. Notice of Arrest and Seizure of the Defendant shrimp was published in *La Gaceta*, a newspaper of general circulation in Hillsborough County, Florida, on March 20, March 27, and April 3, 1998. (Docket No. 15, Paragraph 9).

10. Claimant has filed the only claim to the Defendant shrimp, and the time within which additional claims to the defendant shrimp could be filed has expired. (Docket No. 15, Paragraph 10).

Claimant's statement of facts include the following:

1. Claimant is an importer of food products into the United States. (Docket No. 16, Page 3).

2. In July, 1997, Claimant conditionally purchased two (2) loads of frozen shrimp, each containing four-hundred twenty (420) and nine-hundred thirty-five (935) cartons of frozen shrimp, which included the Defendant shrimp, from Zhejiang Foreign Economic Relations and Trade Development Corporation. (Docket No. 16, Page 4).

3. The two (2) loads of frozen shrimp were conditionally sold to Singleton, prior to leaving the China port. (Docket No. 16, Page 4).

4. The two (2) loads of shrimp were imported by the Claimant into the United States in September, 1997, through the port of Los Angeles and a customs entry was filed for each load. The shipments were admitted by the FDA without inspection and were released into Claimant's custody on September 17, 1997. (Docket No. 16, Page 4).

5. Before this shipment left China, Claimant agreed to sell these two (2) loads of Defendant shrimp to Singleton, having its principal place of business in Tampa, Florida, under the condition that the goods were first tested and must pass Singleton's incoming product quality control specifications. (Docket No. 16, Page 4).

6. Singleton delegated the testing of the Defendant shrimp to the NMFS.

7. Since NMFS found the shrimp adulterated, Singleton never paid for the goods. As is standard procedure in the seafood industry, a buyer accepts and pays for goods only after performing a quality control examination of the merchandise and determining that the goods are saleable and not otherwise defective. (Docket No. 16, Page 5).

8. The State of Florida placed a "stop sale" Order on the shrimp pursuant to section 500.172(1), of the Florida Statutes (1995). Claimant immediately began discussions with the Florida Department of Agriculture to provide for the exportation of the Defendant shrimp. (Docket No. 16, Page 5).

9. Given the condition of the goods, Claimant will not obtain repayment of the purchase price, which was approximately $78,515.40, until and upon return to the supplier of the goods. Until the goods are returned, no repayment can be obtained and the Claimant suffers further economic loss, including accruing storage charges. Claimant has no desire to sell the adulter-

ated goods and thereby injure its business reputation. (Docket No. 16, Page 5).

10. Claimant previously purchased eleven (11) containers of frozen shrimp from the same supplier, none of which were found to be adulterated. Claimant would not knowingly accept, purchase or sell adulterated food and would not have paid for the Defendant shrimp had Claimant had any reason to believe that it contained adulterated shrimp. Claimant, further, had no reason to believe that the articles were adulterated prior to the release of the goods from Customs' custody. (Docket No. 16, Page 6).

11. The Defendant shrimp were shipped in sealed cartons, each carton containing [six blocks (of 2 kg. each)] sealed in plastic. Upon Claimants information and belief, none of the cartons or blocks containing the Defendant shrimp were ever opened subsequent to importation, except for cartons subject to examination or inspection. The Defendant shrimp became adulterated, as alleged in the Complaint, prior to importation of the goods into the United States. (Docket No. 16, Page 6).

## DISCUSSION

Claimant requests permission to export Defendant shrimp to the original foreign supplier pursuant to 21 U.S.C. § 334(d). (Docket No. 11). After condemnation, a claimant may be permitted to regain custody of the condemned articles in order to destroy the condemned articles or to attempt to bring the condemned articles into compliance with the FDCA. *See* 21 U.S.C. § 334(d)(1)(1998). A court may also permit a claimant to regain custody of the condemned articles for the purpose of reexportation of the condemned articles to the original foreign supplier, if the claimant shows that the adulteration of the article did not occur once the article was imported and that the claimant had no reason to believe that the articles were adulterated before they were released from customs. *See* 21 U.S.C. § 334(d)(1)(1998). In addition, where, as in the case at hand, the claimant seeks to export the condemned articles to the original foreign supplier, 21 U.S.C. § 381(e)(1)(c)and (d) must be complied with. *See* 21 U.S.C. § 334(d)(1)(1998). This requires the claimant to establish that

the condemned articles will be labeled on the outside of the shipping package "for export only" and that the condemned articles will not be offered for sale or sold in domestic commerce. *See* 21 U.S.C. § 381(e)(1)(c),(d)(1998). A claimant must, further, be prepared to post a penal bond to ensure compliance with a court's order. *See* 21 U.S.C. § 334(d)(1998).

█ In the case at hand, the Defendant shrimp were shipped in sealed cartons. (Docket No. 16, Page 6). Each sealed carton contained six blocks of shrimp, sealed in plastic. (Docket No. 16, Page 6). Upon Claimant's information and belief, none of the cartons were unsealed after their importation. (Docket No. 16, Page 6). The cartons were opened for the first time on the date of their inspection. (Docket No. 16, Page 6). This sufficiently supports the requirement that the condemned articles must not have become adulterated after their importation into the United States. *See* 21 U.S.C. § 334(d)(1)(a)(1998).

Claimant further states that eleven (11) containers of shrimp have previously been purchased from the same foreign supplier and that none of the previous containers contained any adulterated shrimp. (Docket No. 16). This fact, along with the fact that Claimant had previously paid the foreign supplier for the shrimp and that Claimant immediately sought reexport of the shrimp to the foreign supplier, show that Claimant had no reason to believe that the imported shrimp were adulterated, which satisfies the second requirement, under 21 U.S.C. § 334(d)(1)(b).

Claimant is prepared to label the cartons of condemned shrimp "for export only" and will not offer the condemned shrimp in domestic commerce, (Docket No. 11), thus satisfying the final two requirements contained in 21 U.S.C. § 381(e)(1)(c) and (d). Claimant is also prepared to post a penal bond to ensure compliance with the Court's Order. (Docket No. 11).

Neither 21 U.S.C. § 334(d), nor 21 U.S.C. § 381(e)(1) restrict reexportation to situations where the condemned articles have never been offered for sale in domestic commerce. The statutory language contained in

21 U.S.C. § 334(d) recognizes the fact that the requirements of section 381(e) can be complied with after the payment of bond and condemnation. *See* 21 U.S.C. § 334(d)(1998)(stating that "in all cases of exportation the bond shall be conditioned that the article shall not be sold or disposed of until the applicable conditions of section 381(e) of this title have been met.")

■■■ Plaintiff claims that exportation of the condemned Defendant shrimp is not proper because of a fifth requirement added to section 334 of the FDCA in a 1997 amendment. (Docket No. 15). The 1997 amendment to section 334 added the requirement that "Any person seeking to export an imported article pursuant to any of the provisions of this subsection shall establish that the article was intended for export at the time the article entered commerce." 21 U.S.C. § 334(d)(1)(1998). The requirement added to section 334, by the 1997 amendment, cannot be applied to the case at hand. There is an established presumption against retroactive legislation in the United States. *See Hughes Aircraft Co. v. United States ex rel. Schumer,* 520 U.S. 939, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997); *see also Landgraf v. USI Film Products,* 511 U.S. 244, 265, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). When a federal statute is enacted, after the events giving rise to a law suit have occurred, a court must determine whether Congress expressly stated, within the statute, the statutes reach. *See Landgraf,* 511 U.S. at 280, 114 S.Ct. 1483. If Congress has not expressly stated the statutes reach, the court must decide whether the new statute would have a "retroactive effect". *See id.* "Retroactive effect" has been interpreted as meaning that the application of a new statute, to acts performed before the statute was enacted, would impair the parties' rights which were possessed when the act took place, increase a party's liability for acts previously performed, or impose new duties on a party regarding acts that have been already completed. *See Landgraf,* 511 U.S. at 280; *F.D.I.C. v. Hinch,* 879 F.Supp. 1099 (N.D.Okl.1995). If any one of the "retroactive effects" would occur, upon application of the new statute, the statute's retroactive application is prohibited. *See Landgraf,* 511 U.S. at 280, 114 S.Ct. 1483. If a statute

produces "retroactive effects" it cannot apply to acts occurring before its enactment, unless Congress clearly stated an intent otherwise. *See id.*

Plaintiff relies on the Supreme Court's holding in *Bradley v. Sch. Bd. of City of Richmond,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), to support their contention that a court must apply the law in effect at the time the court renders its decision. (Docket No. 15). Plaintiff's reliance on *Bradley* is in error. *See Bradley,* 416 U.S. at 696–724, 94 S.Ct. 2006. "*Bradley* did not alter the well-settled presumption against application of the class of new statutes that would have genuinely "retroactive" effect." *See Landgraf,* 511 U.S. at 277, 114 S.Ct. 1483. The issue before the Court in *Bradley* involved the determination of attorney fees. *See Bradley,* 416 U.S. at 705, 94 S.Ct. 2006. Unlike the situation at hand, a determination of attorney fees is "collateral to the main cause of action" and "uniquely separable from the cause of action to be proved at trial." *See Landgraf,* 511 U.S. at 277, 114 S.Ct. 1483 (quoting *White v. New Hampshire Dept. of Employment Security,* 455 U.S. 445, 451–52, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982)). The Supreme Court in *Bradley* did not intend to "displace the traditional presumption against applying statutes affecting substantive rights, liabilities, or duties to conduct arising before their enactment." *Landgraf,* 511 U.S. at 278, 114 S.Ct. 1483.

■■■ Plaintiff further states that the 1997 amendment to section 334 of the FDCA, merely clarifies the original purpose of the statute and should, therefore, be applied to the case at hand. (Docket No. 15) Whether or not Congress intended a mere clarification of section 334, is of no significance to the case at hand. *See id.* at 286, 114 S.Ct. 1483. The fact that the retroactive application of a new statute would "vindicate its purpose more fully", is not enough to overcome the strong presumption against retroactivity. *See id.* at 286, 114 S.Ct. 1483.

■■■ The Court finds that Claimant, in the case at hand, has satisfied the four statutory requirements contained in 21 U.S.C. § 334(d)(1) and 21 U.S.C. § 381(e) in effect at the time the Defendant shrimp entered

commerce. Further, Claimant is prepared to post a penal bond to ensure compliance with the Court's Order. The 1997 amendment to the FDCA does not apply to the case at hand because Congress has not stated within the statute or the legislative history of the 1997 amendment the specific reach of the amendment. The fifth requirement, added to section 334 of the FDCA by the 1997 amendment, would impose a new duty on the Claimant by requiring the Claimant to show that the Defendant shrimp were intended for export at the time the Defendant shrimp entered commerce. Claimant cannot perform the new duty required, under the 1997 amendment, to the acts giving rise to the case at hand. Claimant has tailored the importation of subsequent articles into the United States to conform with the additional requirement included in the 1997 amendment. However, Claimant cannot go back and undo the entrance of the Defendant shrimp into the United States, in order to comply with the 1997 amendment. At the time the Defendant shrimp were admitted into United States commerce, Claimant complied with all the statutory requirements for reexportation and that is sufficient to allow reexportation of the Defendant shrimp involved in this case. Accordingly, it is

**ORDERED** that Claimants Motion for Exportation, (Docket No. 11), be **granted** and that:

1. Claimant shall execute and file with the Clerk of this Court a good and sufficient corporate surety bond in an amount equal to the invoice value of the condemned articles in addition to the expected duties to be paid upon export of the condemned articles, payable to the United States of America, and conditioned upon Claimant abiding by the terms of this Order and those of any further decrees or orders entered in this action.

2. Upon receiving notice from the Clerk of this Court that the bond has been posted, the United States Marshal for this District shall release the articles from his custody to the custody of the claimant for the sole purpose of exportation in compliance with the terms of this decree.

3. Claimant shall mark each of the cases of the condemned articles with the words **"For Export Only"** in a conspicuous location with ink, stickers, or any other practical method, and upon completion of such marking shall file with this Court a statement certifying that all of the cases have been marked in accordance with this Order.

4. Upon the filing of the foregoing certification, Claimant shall export the Defendant shrimp to Zhejiang Foreign Economic Relations and Trade Development Corporation at the following location: No. 216 Yan An Road, Hangzhou, China.

5. Upon completion of exportation, Claimant shall file with this Court a statement certifying that the Defendant articles were exported to Zhejiang Foreign Economic Relations and Trade Development Corporation, at the above address, and shall include therewith a steamship arrival certificate or other document evidencing arrival of the goods in China.

6. Upon the filing of the foregoing certification and on motion of the Claimant, the bond given in this proceeding shall be exonerated and discharged.

7. Claimant shall not sell or offer for sale the Defendant shrimp, or otherwise dispose of them, except in accordance with this Order.

8. Claimant shall not reimport, or participate in any way in the reimportation of the Defendant shrimp into the United States.

9. If Claimant breaches any condition of this Order, or any further order in this proceeding, Claimant shall immediately return the articles to the custody of the United States Marshal for this District, and on motion of the United States, the bond shall be forfeited.

10. This Court retains jurisdiction to issue such further orders, as may be necessary, to the proper disposition of this proceeding.